6174. HICKS *v.* ATLANTIC COAST LINE RAILROAD CO.

1. The court did not err in sustaining the general demurrer and dismissing the petition.
(a) When a statute of a foreign jurisdiction is pleaded as the basis of an action, the statute is to be given the construction adopted by the court of last resort of that jurisdiction.
(b) The proximate cause of the plaintiff's injury was a hole excavated between cross-ties and temporarily left open for the purpose of being filled in with ballast and thus improving the defendant's roadway, and this hole, as described in the petition, was not a defect in the way or works of the railroad (within the purport of the Alabama statute as construed by the courts of that State) for which the defendant was liable to the plaintiff.
(c) Under the allegations of the petition, the injury occurred during a suspension of the employment of the plaintiff by the defendant, in an interim of time for purposes of rest, and in which the plaintiff was not under the control of the defendant, and the trip, in the course of which the plaintiff alleged he was injured, must be assumed to have been a temporary stepping aside on the part of the servant from the employment of the master for the purpose of pursuing his own affairs. Under the Alabama statute, recovery against a master by a servant can only be had when an injury is received while the servant is "in the service or business of the master."

DECIDED SEPTEMBER 10, 1915.

Action for damages; from city court of Blakely—Judge Sheffield.  November 18, 1914.

*Rambo & Wright, Glessner & Collins,* for plaintiff.

*Pope & Bennet,* for defendant.

RUSSELL, C. J.   This action was brought to recover damages for injuries received by the plaintiff in starting a hand-car operated by a gasoline motor, and is expressly based on section 3910, volume 2, of the Code of Alabama, by the terms of which an employer is liable for personal injuries received by his servant or employee while in the service or business of the master, (1) when the injury is caused by reason of any defect in the condition of the ways, works, machinery, or plant connected with, or used in the business of, the master or employer; (2) when the injury is caused by reason of the negligence of any person in the employment of the master who has superintendence intrusted to him and while in the exercise of such superintendence; (3) when such injury is caused by reason of the negligence of any person in the employment of the master, to whose orders or directions the servant or employee, at the time of the injury, was bound to conform, and did conform, if such injury resulted from his having so conformed; (4) when such injury is caused by the reason of the act or omission of any person in the service or employment of the master in obedience to the rules, regulations or by-laws of the master, or in obedience to particular instructions given by any person delegated with the authority of the master in that behalf; (5) when such injury is caused by reason of the negligence of any person in the service or employment of the master who has charge of any signal, points, locomotive, engine, electric motor, switch, car, or train upon a railway, or of any part of the track of a railway.

A great deal has been said in the written argument as to the pertinency of the Federal employer's liability act, and as to whether the Federal statute is applicable to the case at bar.  However, we shall treat the case as if the Federal employer's liability act were inoperative, and shall consider the merit of the petition to withstand the demurrer solely in connection with the Alabama law upon which the suit is expressly based.  It is well settled that statutes of a foreign jurisdiction are to be given the construction which is applied to them by the courts of last resort of the

jurisdiction. Construing the present action by the decisions of the Supreme Court of Alabama and of the Court of Appeals of that State, we have reached the conclusion that the trial judge did not err in sustaining the general demurrer and in dismissing the petition. It may be true, as stated by learned counsel for the plaintiff, that the action of the trial judge was controlled by the ruling of the Supreme Court of the United States in Pederson *v.* Delaware, Lackawanna & Western R. Co., 229 U. S. 146; but even if this was the reason that influenced the trial court, it would be immaterial, for a judgment which is right must be affirmed although a wrong reason may have been assigned for its rendition. In the present case, however, it does not appear that the judgment generally dismissing the petition, without assigning any reason therefor, is based upon the ruling in Pederson's case; nor does it appear, otherwise than from the statement of counsel for the plaintiff, that the judge was of the opinion that the case fell under the provisions of the Federal employer's liability act.

According to the allegations of the petition, the plaintiff intended to go to a place called Pansey, to meet the pay-car of the defendant, and he was at the same time to take his customary noon rest. We think the demurrer could properly have been sustained because of the insufficiency of the allegations of negligence, and the failure to show such a concurrence of negligence of the defendant with the operative cause of the plaintiff's injury as to entitle the servant to recover damages from his employer. To authorize a recovery, there must concur, first, negligence; second, the negligence must be imputable to the master; and, third, it must be the proximate cause of the injury. Construing the allegations of the petition strictly, it is clear that the proximate cause of the plaintiff's injury was a hole fourteen inches deep which had been temporarily excavated between cross-ties for the purpose of filling in the track with ballast. But for the existence of the hole the plaintiff would not have fallen, even if the negro employee in charge of the motor was unskillful and inexperienced, and even if there had been time for the brake to have been applied. But for the hole into which the plaintiff stumbled, there would have been no fall which could be attributable, under the allegations of the petition, to negligence on the part of the defendant. The hole, as described in the petition, was not such a

defect in the way of the railroad, either as that term is defined by the Alabama courts or by our own, as is included in the purport of the Alabama statute. According to the allegations of the petition, the hole, if a defect, was not a permanent defect. The existence of the hole was a mere temporary condition of the track, necessary to maintain it in suitable repair and thus to keep transportation safe and efficient. It was one of those risks incident to the service which a servant assumes when he obligates himself to assist 'in repairing the tracks of a railway. As was said in an Alabama decision quoted in *Hubbard* v. *Central Ry. Co.*, 131 *Ga.* 661 (63 S. E. 19, 19 L. R. A. (N. S.) 738), construing this statute: "There must be some inherent condition of a permanent nature of the ways, works, machinery, or plant, which unfits the thing for its uses,—some weakness of construction with reference to the proposed uses, . . some inadaptation to its purposes, . . some obstacle in the way of use, or obstruction to use to which is a part of the thing itself, or of the condition of the thing itself, . . to constitute a defect in the ways, works, machinery, or plant, under the statute." In that case it was held that a wire stretched over and across the track of a railway company, not sufficiently high above a freight-car running on the track to permit an employee standing on the top of the car to safely pass under the wire, did not constitute a defect in the way, when there was nothing to indicate that the wire was not a mere movable object temporarily placed too near the track. In the present case it is plain, from the allegations of the petition, that the excavation between the cross-ties was a mere temporary hole, opened for the purpose of improving the track and road-bed by filling in the excavation with ballast. The defect was not one having permanency, and therefore, by the ruling of the Supreme Court construing the Alabama statute, and also by the decisions of the Alabama courts, the hole into which the plaintiff fell was not a defect in the way or works of the defendant for which the defendant was liable to the plaintiff.

Again, the petition, of course, is to be strictly construed, and if its allegations are subject to two constructions, the one adverse to the pleader is to be adopted. It does not appear that the defendant had any interest in the plaintiff's collecting his pay, even if the purpose of the plaintiff's visit to Pansey was for the purpose

of collecting his pay; and since it was not alleged that that was the object of his visit, it is to be presumed that it was not the purpose of the trip, or else it would have been alleged. Be this as it may, it seems to us that when it was alleged that the plaintiff and his fellow servants had stopped work, no other reasonable inference can be drawn than that there was a suspension of the employment and an interim of time for the noon rest, during which it could not be said that the plaintiff was in the service of the employer, and therefore the trip to Pansey must be assumed as a temporary stepping aside from the employment of the master for the purpose of pursuing his own affairs. *Savannah Electric Co.* v. *Hodges,* 6 *Ga. App.* 470 (65 S. E. 322). In paragraph 5 of the petition it is alleged that "work was then temporarily suspended for the purpose of going to the company's station at Pansey and there meeting its pay-car, as well as to take their customary noon rest." As construed by the Supreme Court of Alabama, the master is liable *only* "when a personal injury is received by the servant or employee in the service or business of the master or employer." Liability, under the Alabama statute, thus depends entirely upon the general relationship of the master and servant, and upon whether or not the servant was, at the time, actually in the service or business of the master; in other words, upon the existence of the relationship at the exact time when the injury was received. And although the relationship of master and servant may subsist generally between two persons, the one occupying the relationship of master is not liable, under the Alabama statute, to the one occupying the relationship of servant for any injury received by the servant, unless the servant was, at the identical time when he received the injury, acting in the business or service of the master, and not acting in some other business or service for himself or some one else. So in this case, if there be liability on the part of the defendant, it can not be imposed by the Alabama statute, which is expressly pleaded and alone relied upon by the plaintiff. See Southern Ry. Co. *v.* Bentley, 1 Ala. 240 (25 So. 34) ; Ga. Pacific Ry. Co. *v.* Propst, 85 Ala. 203 (4 So. 711) ; Grissom *v.* A. B. Ry., 152 Ala. 110 (44 So. 661, 13 L. R. A. (N. S.) 561, 126 Am. St. R. 20). We may say, in passing, that other courts seem to adopt a similar construction to that announced by the Alabama courts. In 2 Bailey on Personal In-

juries, § 3215, it is said that "Where a section-hand, when injured, was upon his hand-car proceeding, after his day's work was done, to another part of the road than that on which his own duties required him to work, at the request of the foreman, on business personal to the foreman, it was held that the company was not liable," citing Hurst v. C., R. I. & P. R. Co., 49 Iowa, 76. The plaintiff relied solely upon the Alabama statute, and, strictly construing his allegations,· it is apparent that he was not within its terms, in that at the time of the injury he was not "in the service or business of the master," but that on the contrary all service and business of the master had been stopped, and the plaintiff was on his way to the station of Pansey to meet the pay car and take his customary noon rest. It is not alleged (and of course is not to be inferred) that either his trip to Pansey or his customary noon rest was a part of the service of the master. The service and business of the master had stopped, even if the master had an interest in the welfare and protection of the servant, for it does not appear that the master could have required the plaintiff to go to Pansey or to spend the time allotted him for rest except as he desired. There was no error in sustaining the demurrer to the petition.      *Judgment affirmed.*