25925. HOCKMUTH *v.* PERKINS, next friend.

Decided March 18, 1937.    Adhered to on rehearing, April 3, 1937.

*Bussey & Fulcher,* for plaintiff in error.

*Isaac S. Peebles Jr., William K. Miller,* contra.

MacIntyre, J. "R. R. Perkins, as next friend of James R. Perkins," brought an action against "Henry Hockmuth, doing business under the name and style of Vienna Bakery," to recover $15,000 damages. The questions for determination are whether the court erred (1) in overruling the demurrer. to the original petition, (2) in allowing the original petition to be amended, and (3) in overruling the demurrer to the petition as amended.

The petition substantially avers: 1. The defendant operates a bakery in Augusta, Georgia, and operates trucks "in the Augusta trade territory for the delivery of his products, including a truck delivery between Graniteville, S. C., and Vaucluse, S. C., . . in the State of South Carolina." 2. James R. Perkins "is a minor fourteen years of age on December 11, 1934." 3. "At the times hereinafter mentioned, Woodrow Price was in the employment of the defendant, . . operating for the defendant a truck for delivery of bakery products . . on the highway from Warrenville, Graniteville, and Vaucluse, S. C." On May 20, 1935, Price agreed to pay the said minor $3 per week if he would go along on said truck route to assist him in making deliveries on said route, and when said minor reported at the defendant's place of business on said date, the defendant approached him "as though he were a customer, asking him what he wanted." The minor replied, in substance: "I am the boy Mr. Woodrow Price asked to come here this morning to take a job with him on the

truck that he is running over in South Carolina for you." The defendant replied: "All right." The minor "then assisted . . Hockmuth and . . Price in loading the truck that was to be, and was, operated by the said . . Price for the defendant in the State of South Carolina, and went off on said truck with the full knowledge and consent of the defendant." 4. Said minor "continued daily to go upon said truck of the defendant until and including May 24, 1935." On said date "said minor, in the presence of and with the full knowledge of . . Hockmuth, assisted said . . Price and the defendant in loading said truck for its delivery on Federal Highway No. 1 and in Warrenville, Graniteville, and Vaucluse, S. C." 5. "That the said . . Price, driving defendant's truck and on defendant's business, accompanied by said minor and helper, with the full knowledge of the defendant, had completed his delivery at Vaucluse, S. C., about 4:30 p. m. on May 24, 1935, and had started back toward Augusta by way of Graniteville, S. C., accompanied by said minor in said truck." As Price approached a bridge about two and a half miles from Vaucluse, he increased the speed of the truck from the reasonable speed at which he had been traveling to sixty miles per hour. "The road . . is a winding road, with quite a number of curves, especially for a mile on both sides of said bridge. The car was swerving from one side of the road to the other as it approached and went over said bridge; and said minor, seeing the danger consequent upon such reckless speed, remonstrated with . . Price about the speed of the truck as the same approached the said bridge; and when . . Price would not slow down . . , the said minor requested . . Price to stop and let him . . get out of the said truck. This . . Price refused to do, and proceeded across the bridge, veering from one side to the other, at a rate of sixty miles per hour." About a quarter of a mile "towards Graniteville from said bridge . . is a dangerous curve on an embankment. The said minor, seeing that they were about to meet a T-model Ford on the said curve, and, knowing that the . . truck could not go around the said curve at the dangerous rate of speed said truck was going, warned said Price that he could not make said curve at the rate of speed he was going, and begged him to slow up. Instead of slowing up, . . Price, in order to annoy and further frighten . . said minor,

increased the speed of said truck up to sixty-five miles per hour as they approached said curve." And when said truck reached said curve, it "was unable to negotiate same and plunged down an embankment into a pine tree . . , practically demolishing the truck," inflicting designated serious injuries upon the minor. 6. (Deals with the results of the alleged injuries.) 7. Said minor "was wholly without fault, and the said injuries were caused solely by the wilful and wanton negligence of the defendant acting by and through the said driver of the defendant's truck, . . in that said servant of defendant drove said truck at a high and dangerous rate of speed in violation of the laws of the State of South Carolina and in excess of sixty miles per hour; and that in approaching said curve, defendant's driver did not slacken the speed of the said truck to such a rate that he could safely go around said curve, but increased the speed of the same; and in that defendant's driver of said truck did not drive the same at such a speed as to enable him to control said truck as aforesaid to allow said minor to alight therefrom."

The defendant demurred to the petition: 1. "Because said petition does not set forth any cause of action against this defendant." 2. No cause of action is set forth, "because said accident occurred in the State of South Carolina, and plaintiff sustained his alleged injuries through the negligence of a fellow servant, one Woodrow Price, for which this defendant is not liable." 3. No cause of action is set forth "because said accident occurred in the State of South Carolina, and the injuries alleged to have been sustained by the plaintiff were injuries which arose out of risks of his employment which were assumed by said plaintiff." 4. The petition does not allege "the number of persons in the employ of the defendant, which fact is necessary for this defendant to determine its liability, if any, to the plaintiff."

The following amendment to the petition was allowed "subject to demurrer or objections:" 1. "That attached hereto as Exhibit A is a copy of the South Carolina statute governing the transaction in question." 2. Plaintiff "denies that said minor was injured by any ordinary risk of his employment." 3. That "said injuries to said minor were the result of the wilful and wanton acts of the defendant, acting by and through the said . . Price, his alter ego and driver, in that the said . . Price was warned

by the said minor that he . . could not make the dangerous curve referred to in paragraph five of said petition, owing to the high and dangerous rate of speed he was driving said truck, and, although implored by said minor to slow down, he, said driver, in heedless and reckless disregard of the safety of said minor wilfully and wantonly increased the speed of said truck to such an extent that it was impossible for him . . to make said curve with said truck, with the result that it was upset as alleged, and said minor, helper of Price, was injured as stated, and in the emergency thus created by defendant's agent, said minor was unable to protect himself from injury." 4. "That said minor realized that he was in danger, and not only protested . . but requested said Price to stop the said truck and let him get out. That . . Price refused to accede to said request, and to prevent said minor from getting out increased the speed of the truck as stated, retaining said minor in said truck against his will. That said minor, under said circumstances and in the emergency thus created by the said defendant, ceased to be an employee and became an unwilling guest or prisoner of defendant in said truck, was so kept and so continued therein against his will until the receipt of the injuries hereinbefore referred to. All of which was caused by the wilful, wanton acts of said defendant by the said agent and alter ego in charge of said truck and in heedless and reckless disregard of the life and limb of said minor, all in violation of said law of South Carolina." 5. "That said injuries were not the result of accident, and do not, therefore, come within the workmen's compensation law, but were the result of said wilful, wanton, and heedless conduct of defendant's said agent, . . Woodrow Price." Attached to the foregoing amendment is a copy of the guest statute of South Carolina, as set out in the Code of 1932 of that State, § 5908, as follows: "No person transported by the owner or operator of a motor vehicle as his guest without payment for such transportation shall have a cause of action for damages against such automobile, its owner or operator, for injury, death, or loss, in case of accident, unless such accident shall have been intentional . on the part of said owner or operator or caused by his heedlessness or his reckless disregard of the rights of others." Also attached to the petition as an exhibit is a statute of South Carolina, making it unlawful for "any person to

. . drive any . . automobile . . upon any street or alley in any city or town, or on any public highway of this State, in a wilfully careless or reckless manner."

Our view being that the facts alleged bring this case within the Georgia workmen's compensation act, we deem it unnecessary to discuss many of the various questions bearing upon the inquiry as to whether or not a cause of action was set out under the "guest statute" of South Carolina. Some of the cases relating to the construction and application of that statute are *Lee* v. *Lott*, 50 *Ga. App.* 39 (177 S. E. 92); *Fulghum* v. Bleakley, 177 S. C. 286 (181 S. E. 30); Ralls *v.* Saleeby, 178 S. C. 431 (182 S. E. 750). We shall now undertake to sustain our view that the case comes under the Georgia workmen's compensation law. "Where the act is operative, it is exclusive as between the employee and employer." *Holliday* v. *Merchants & Miners Transportation Co.*, 32 *Ga. App.* 567, 571 (124 S. E. 89), citing Ga. L. 1920, p. 167. This rule is so well settled that we deem it unnecessary to cite further authority. The fact that the accident happened in South Carolina does not affect the applicability of our compensation act. *Metropolitan Casualty Insurance Co.* v. *Huhn*, 165 *Ga.* 667 (142 S. E. 121). Neither does the fact that the plaintiff was a minor take the case without the provisions of said act. *Horn* v. *Planters Products Co.*, 40 *Ga. App.* 787 (151 S. E. 552); *Maloney* v. *Kirby*, 48 *Ga. App.* 252 (172 S. E. 683). "'Employee' shall include every person in the service of another under any contract of hire or apprenticeship, written or implied, except one whose employment is not in the usual course of the trade, business, occupation or profession of the employer and, except as hereinafter provided, minors are included even though working in violation of any child labor law or other similar statute." Code, § 114-101. "'Injury' and 'personal injury' shall mean only injury by accident arising out of and in the course of the employment . . nor shall 'injury' and 'personal injury' include injury caused by the wilful act of a third person directed against an employee for reasons personal to such employee." § 114-102. (Ga. L. 1920, p. 167; 1922, pp. 185, 186.) This court has held that "an injury by accident is an injury which is sudden, unexpected, and undesigned and which arises out of and in the course of the employment." *American Mutual Liability Ins. Co.*

v. *Savage,* 49 *Ga. App.* 106 (174 S. E. 363). There is no averment in the pleadings in the instant case that the alleged wilful and wanton injuries were inflicted on the minor for any personal reason. It was held, in *Pinkerton National Detective Agency* v. *Walker,* 157 *Ga.* 548 (122 S. E. 202), that "the fact that the injury is the result of the wilful or criminal assault of a third person, and the employee is guilty of no misconduct, does not prevent the killing from being accidental within the meaning of the workmen's compensation act." See same case in 30 *Ga. App.* 91, 94 (117 S. E. 281); *Keene* v. *New Amsterdam Casualty Co.,* 34 *Ga. App.* 257 (129 S. E. 174); *Scott* v. *Travelers Ins. Co.,* 49 *Ga. App.* 157, 162 (174 S. E. 629). We think that the alleged injuries in the instant case were accidental within the meaning of the Georgia workmen's compensation law. We are further of the opinion that the minor was an employee of Hockmuth. "If a servant who is employed to do certain work for his master employs another person to assist him, the master is liable for the negligence of the assistant only when the servant had authority, express or implied, to employ him, or when the act of employment is ratified by the master." *Cooper* v. *Lowery,* 4 *Ga. App.* 120 (60 S. E. 1015). "Where a person is employed and paid by a servant as a temporary substitute, with the express or implied knowledge of the master, or with a subsequent ratification by the latter, the person employed is entitled to the same protection against injury while engaged in the master's work as the regular servant for whom he is substituting, even though he may not be entitled to recover wages from the master." *Payne* v. *Rivers,* 28 *Ga. App.* 28 (3) (110 S. E. 45). See also *U. S. Fidelity & Guaranty Co.* v. *Stapleton,* 37 *Ga. App.* 707 (141 S. E. 506); *Roberts* v. *U. S. Fidelity & Guaranty Co.,* 42 *Ga. App.* 668 (157 S. E. 537). The facts in Michaux *v.* Gate City Orange Crush Bottling Co., 205 N. C. 786 (172 S. E. 406), are so strikingly like those pleaded in the instant case that we quote from the North Carolina decision as follows: "The Gate City Orange Crush Bottling Company owned several trucks which it used to distribute its products. W. S. Simmons drove one of said trucks for the defendant bottling company, and each truck driver was assigned a certain territory. The truck-drivers hired boys, with the consent and knowledge of the employer, to assist in the

distribution of the products. The drivers paid the boys so hired by them out of their own wages or commissions. W. S. Simmons, a truck-driver, employed the deceased, Bailey Williams, a boy about sixteen years of age, as a truck-helper and paid him about $4 per week. On May 26, 1920, the truck operated by Simmons stopped to make a delivery of soft drinks, and while the truck was standing still the deceased and another negro boy engaged in a fuss about an Eskimo pie. The driver of the truck started off and ran some little distance when the deceased in this case ran after it, caught the truck, and in attempting to climb on it fell and sustained the injury causing his death." The first headnote of the foregoing case reads: "A boy employed by a truck-driver for a bottling company with the knowledge and consent of the company, whose services are necessary to the proper distribution of the products of the company, is an employee of the company within the meaning of the workmen's compensation act." Since there was much argument between counsel as to whether or not the truck-driver in the present case was an alter ego of his employer, we call attention to *Moore* v. *Dublin Cotton Mills*, 127 *Ga.* 609 (56 S. E. 839, 10 L. R. A. (N. S.) 772), where it was said. "The term 'vice-principal,' as used in the fellow-servant law, has been defined as including any servant who represents the master in the discharge of those personal or absolute duties which every master owes to his servant; such duties being often referred to as the non-assignable duties of the master. . . Among the non-assignable duties of the master are, providing machinery and appliances, the place to work, the inspection and repair of premises and appliances, the selection and retention of servants, the establishment of proper rules and regulations, and the instruction of servants. This enumeration, however, is not exhaustive, but simply illustrative." That decision cited a wealth of cases on the question under consideration. In *Webb* v. *Tubize-Chatillon Corporation*, 45 *Ga. App.* 744 (2) (165 S. E. 775), this court held that "a petition in a suit to recover at common law, brought by the employee against the employer, fails to set out a cause of action and is subject to general demurrer where it fails to show by competent allegations that the plaintiff's rights are not determinable under the provisions of the workmen's compensation act, but are determinable at common law." Our con-

clusion is that the pleadings in the instant case show that the plaintiff's injuries resulted from an accident arising out of and in the course of the employment, and that his remedy under the Georgia workmen's compensation law is exclusive. We hold that the court erred in overruling the general demurrer.

*Judgment reversed. Guerry, J., concurs. Broyles, C. J., dissents.*

### ON REHEARING.

MacIntyre, J. "In Shaw *v.* McFarlane (1914) 52 Scot. L. R. 236, 8 B. W. C. C. 382, Lord Dundas said: 'In the first place, I think it is now fully settled that a claim for compensation under the act is not excluded merely because the accident was caused by the ultroneous or even the felonious act of a third party, provided the workman sustained it owing to his being specially exposed by the nature of his employment to the risk of danger which actually befell him. . . Thus in the present case, if the burns and bruises directly resulted from an accident, viz., a fall which by the very nature of the respondent's employment was attended with special risk and danger of such consequences, the cases seem to show that the accident arose out of the employment, and that the court need not and ought not to inquire whether the fall itself was caused by something not arising out of, and indeed quite unconnected with, the employment, viz., the unwarrantable blow of an intoxicated stranger.'" "An assistant schoolmaster in an industrial school, who died from the fracture of the skull and other injuries, the result of an assault committed upon him by several boys of the school in pursuance of a prearranged plan, suffered an injury by accident arising out of and in the course of his employment." L. R. A. 1916A, 64. If an accident befalls the claimant under the conditions as disclosed by the facts pled in the plaintiff's petition, it appears to us that, owing to the driving of the truck at a reckless rate of speed, to wit 65 miles per hour, it is rightly called an accident due to the wilful and wanton misconduct on the part of the driver of the truck; but it is none the less an accident arising out of the claimant's employment, because it is incidental to it, even though the claimant "requested said Price [driver] to stop said truck and let him get out," and "that the said Price refused to accede to his request." The occurrence was such as was likely to happen because of the very

nature of the work which the claimant was performing. "'It need not have been foreseen or expected but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence'." *New Amsterdam Casualty Co.* v. *Sumrell,* 30 *Ga. App.* 682, 688 (118 S. E. 786). We think that the occurrence was an industrial accident and should be held to have arisen out of and in the course of the employment, and therefore comes under the provisions of the workmen's compensation act.

*Judgment adhered to. Guerry, J., concurs. Broyles, C. J., dissents.*